**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

_____

| | |
|---|---|
| **NICOLE WATSON,** | ) |
| | ) |
| **Plaintiff,** | )   **Civil Action No. 1:15-cv-124-AJT/JFA** |
| | ) |
| **v.** | ) |
| | ) |
| **GARDA WORLD SECURITY** | ) |
| **CORPORATION,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

_____ )

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF THE MOTION FOR PROTECTIVE ORDER AGAINST**
**SUBPOENAS ON BLOOM CONSULTING GROUP AND HEATHER ZINDEL**

## I.      INTRODUCTION

When an employee sues her former employer for gender discrimination, the lawsuit often generates a predictable, Pavlovian reaction. The defendant-employer will frequently serve a subpoena or other discovery request on the plaintiff's new employer, under the guise of seeking information relevant to a defense to the action. The courts are not fooled.

Courts recognize that subpoenas on a plaintiff's current employer are burdensome, oppressive, and fraught with the potential for abuse. Such subpoenas are a form of harassment because they intimidate a plaintiff and interfere with her job by dragging her new employer into litigation about her former employment. These concerns are only exacerbated when a defendant notices the present employer's deposition. Depositions are regarded as a special imposition on third parties, and thus may be more likely to elicit a negative response from the new employer.

Nevertheless, Defendant Garda has launched an intrusive and burdensome discovery campaign on Plaintiff's current employer, Bloom Consulting Group, and its CEO Heather Zindel. Garda seeks Ms. Zindel's deposition and propounds a broad request for Plaintiff Watson's complete employment records at Bloom ("any and all employment-related documents, records and/or files"). Plaintiff has already produced responses to any potentially material information. Accordingly, Defendants' insistence on broad duplicative discovery serves only illegitimate purposes. Indeed, although this compromise was not necessary, Plaintiff suggested that Garda could take written discovery into the narrow areas that are most closely related to disputed issues in the litigation. Defendants refused. Despite the clear availability of alternative, less intrusive means of obtaining information, Defendants insist upon obtaining Plaintiffs Watson's full employment records at Bloom and taking Zindel's deposition. This raises an inference that Garda's expansive subpoenas are designed to harass Plaintiff Watson and interfere

with her employment relationship with Bloom.

Pursuant to Fed. R. Civ. P. 26(c), Plaintiff Watson seeks a protective order against Garda's subpoenas. Defendants' subpoenas seek a host of privileged personnel records that are not relevant to this case and subject Plaintiff Watson (not to mention Bloom and Zindel) to undue burden, annoyance and oppression.

## II.   BACKGROUND

### A.   The Documents Subpoena

On June 1, 2015, Garda served a subpoena (attached as Ex. A) on Plaintiff's current employer, Bloom Consulting Group. The subpoena seeks production of "any and all employment-related documents, records and/or files" pertaining to Plaintiff. It broadly defines such materials to include, but not be limited to:

> all personnel files/records, applications for employment, resumes, records of employment, performance reviews and evaluations, disciplinary records, payroll records, benefits records (including but not limited to medical, dental and vision insurance coverage records and fringe benefits), tax records, termination records, unemployment compensation records, correspondence, documents pertaining to any complaints made by, against, or concerning Ms. Watson, documents pertaining to any legal claims asserted (formally or informally) by or against Ms. Watson, investigations, and other records reflecting her employment.

### B.   The Deposition Subpoena

On July 9, 2015, Defendants served a deposition notice (attached as Ex. B) on Bloom's CEO Heather Zindel. The notice states that the deposition "will be recorded by stenographic means and will be video-taped. The oral examination will continue from day to day until complete, adjourned or continued."

### C.   Plaintiff's Responses

Plaintiff objected to both subpoenas and has attempted to meet and confer with Defendants regarding these issues. Garda has refused to withdraw or tailor either of the

subpoenas and has pushed Bloom to comply.

Plaintiff objected that the documents subpoena is overbroad and seeks protected or confidential information. Further, the subpoena seeks highly irrelevant material, and Plaintiff has already produced any discoverable information with respect to her employment with Bloom. (See Ex. C, meet and confer letter). Garda remains undeterred from its quest for Plaintiff's full employment records.

With regard to the documents subpoena, Plaintiff's counsel sent a meet and confer letter (Ex. D), denying that Zindel had personal knowledge relevant to Plaintiff's claims. Counsel acknowledged that Garda had identified five areas of discoverable information related to Bloom, all concerning the issue of mitigation and damages: (i) Plaintiff's earnings at Bloom; (ii) when and how she sought employment at Bloom; (iii) the terms of her employment relationship with Bloom; (iv) her potential for advancement; and (v) whether she declined or failed to pursue available opportunities for remuneration (assignments and placements) while at Bloom. Plaintiff demonstrated that each of these categories of information was available from other sources and that, in fact, Plaintiff had already provided applicable discovery on each of them.

Nevertheless, Plaintiff proposed that Garda withdraw its deposition subpoena and instead propound limited interrogatories focused on these areas. Defendants refused.

## III.   ARGUMENT

Plaintiff's motion for a protective order against the subpoenas is governed by Fed. R. Civ. P. 26(c). Under Rule 26(c): "The court may, for good cause," issue an order to protect a party from annoyance, embarrassment, or undue burden or expense." Such orders may include "forbidding the disclosure or discovery," "specifying [the] terms" under which it will occur, or "prescribing a discovery method other than the one selected by the party seeking discovery."

The Court should also be guided by Rule 45. Specifically, Rule 45(c)(3)(A) provides that, a court *must* quash or modify a subpoena that "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A); *see also* 1991 Amendment Advisory Notes to Subdivision (c) ("Paragraph (c)(3) explicitly authorizes the quashing of a subpoena as a means of protecting a witness from misuse of the subpoena power.").[1]

### A.   Plaintiff Has a Privacy Interest and Personnel Right in Her Employment Records With Bloom that Garda Cannot Overcome in this Case

As an initial matter, Garda's subpoenas would constitute an impermissible invasion of Plaintiff's privacy and personal rights. It is well established that employees have a protected privacy interest in their personnel files and have standing to move to quash subpoenas for such documents. *See, e.g., Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 239-40 (E.D. Va. 2012) (collecting cases); *Kimes v. Univ. of Scranton*, No. 3:14-cv- 91, 2015 U.S. Dist. LEXIS 21703, at *6 (M.D. Pa. Feb. 24, 2015); *EEOC v. Princeton Healthcare Sys.*, Civ. No. 10-4126, 2012 U.S. Dist. LEXIS 65115, at *62-63 (D.N.J. May 9, 2012); *Smartix Int'l, L.L.C. v. Garrubbo, Romankow & Capese, P.C.*, No. 06 Civ. 1501, 2007 U.S. Dist. LEXIS 85807, at *5 (S.D.N.Y. Nov. 20, 2007); *Chamberlain v. Farmington Sav. Bank*, No. 3:06-cv-1437, 2007 U.S. Dist. LEXIS 70376, at *3 (D. Conn., Sept. 25, 2007)("The plaintiff clearly has a personal right with respect to the information contained in his employment records.").[2]

---

[1] Plaintiff notes that the standards under Rule 26(c) and 45 overlap significantly. "It is well settled that the scope of discovery under a Rule 45 subpoena is the same as that permitted under Rule 26." *Chamberlain v. Farmington Sav. Bank*, No. 3:06-cv-1437, 2007 U.S. Dist. LEXIS 70376, at *3 (D. Conn., Sept. 25, 2007). *See also* Advisory Committee Note to 1970 Amendment to Rule 45(d)(1)("the scope of discovery through a subpoena is the same as that applicable to ... the other discovery rules.").

[2] *See generally Williams v. Bd. of Cty. Com'rs of Unified Government of Wyandotte Cty./Kansas City, KS*, Civ. No: 98-2485-JTM, 2000 U.S. Dist. LEXIS 1311, at *3 (D. Kan. Jan. 21, 2000)

As the court explained in *Smartix*, 2007 U.S. Dist. LEXIS 85807, at *5:

> [an employee] clearly has a personal right with respect to the information contained in his employment records with other companies. His personnel records with other companies are not 'relevant to the claim or defense of any party.' Moreover, pursuant to Fed.R.Civ.P. Rule 26(c) . . . justice requires, in order to protect [the employee] from annoyance, embarrassment, and oppression, that discovery not be had into those personnel records.

In this case, the personal rights at stake are compelling. As set forth in greater detail below, Defendants' subpoena requests have no relevance this case. To the extent Garda seeks information relating to mitigation of damages, it has many less intrusive means to obtain Plaintiff's dates of employment and compensation data. In fact, Garda has already received such information through discovery. Any interest it might have in taking discovery from Bloom and Zindel is thus substantially outweighed by Plaintiff's privacy interest in her current employment records and her personal right to be free from Defendants' intrusions into her post-Garda career.

**B.     Garda's Subpoenas Are Designed to Harass and Embarrass Plaintiff and Interfere With Her Present Employment**

As courts have often counseled in employment cases, subpoenas issued by a defendant-employer on the plaintiff's current employer are ripe for abuse and, "if warranted at all, should be utilized only as a last resort." *EEOC v. Princeton Healthcare Sys.*, 2012 U.S. Dist. LEXIS 65115, at *63 (citation omitted). Such subpoenas not only place a burden on the new employer, but may also label the employee as an "untrustworthy troublemaker" and can have a "direct negative effect" on her employment. *Id.* at *63-65 (citations omitted). Hence, a plaintiff "has a legitimate concern that a subpoena sent to her current employer under the guise of a discovery request could be a tool for harassment and result in difficulties for her in her new job." *Id.* at

---

("The Court recognizes that personnel files and records and are confidential in nature."); *Arias-Zeballos v. Tan*, No. 06 Civ. 1268, 2007 U.S. Dist. LEXIS 5068, at *2 (S.D.N.Y. Jan. 24, 2007) ("courts have recognized that individuals have certain constitutionally protected privacy rights, including 'the individual interest in avoiding disclosure of personal matters.'")(citation omitted).

*63-64 (citation omitted). *See also, e.g., Kimes*, 2015 U.S. Dist. LEXIS 21703 at *6-7; *EEOC v. Tex. Roadhouse, Inc.*, 303 F.R.D. 1, 3 (D. Mass. 2014); *Richardson v. BBB Group, Inc.*, No. 3:14-cv-1014-M, 2014 U.S. Dist. LEXIS 60298, at *3-4 (N.D. Tex. Apr. 30, 2014) (citing cases).

"While the Court always has a duty… to protect parties from excessive and/or oppressive discovery that they seek from each other … the Court must be especially careful when, as here, a litigant seeks information from third parties ... And, because of potential adverse employment consequences, an even greater concern attaches when the third-party is a litigant's current employer." *Pennington v. G.H. Herrmann Funeral Home, Inc.*, 1:09-cv-00390-RLY-JMS, 2010 U.S. Dist. LEXIS 1315, at *2 (S.D. Ind. Jan. 8, 2010)(citations omitted).[3]

Here, Garda's subpoenas expose Plaintiff to the risk of being treated less favorably by her new employer and thereby potentially disrupt her current employment. The subpoenas' vast overbreadth and lack of relevance strongly indicate that Defendants have served them with an improper purpose. In a real sense, much of the damage has already been done by the mere service of the subpoenas.[4] But, it will only be far worse if the Court endorses Defendants'

---

[3] In *Conrod v. Bank Of New York*, 97 Civ. 6347, 1998 U.S. Dist. LEXIS 11634 (S.D.N.Y. July 30, 1998), defendant improperly served a broad third party subpoena on plaintiff's current employer, "potentially jeopardizing her employment relationship," without first attempting to secure the relevant discovery from plaintiff herself. *Id*. at *2-4. As the court aptly stated: "By issuing a subpoena to plaintiff's current employer, defense counsel caused plaintiff to worry about her continued employment relationship, in a manner amounting to harassment. Because of the direct negative effect that disclosures of disputes with past employers can have on present employment, subpoenas in this context, if warranted at all, should be used only as a last resort. The spirit of [26(g)] is violated when discovery is used as a tactical weapon rather than to explore a party's claims and the facts connected therewith." *Id*. at *4-5.

[4] Accordingly, in *Webb v. E. Ramapo Sch. Dist*., No. 7:08-cv-3565 (S.D.N.Y. Dec. 7, 2009)(Ex. E), the court barred defendants from issuing and serving a subpoena on plaintiffs current employer (including any supervisors or coworkers) in the first place. Because defendants failed to provide a specific and adequate justification for the proposed subpoena, "and in light of the potential for highly negative consequences from service of such a subpoena on Plaintiff's current employer," the court directed that defendants would have to obtain advance permission

conduct, allows the subpoenas to stand, and requires Bloom and CEO Zindel to respond. Plaintiff rightly fears that she will suffer adverse career consequences if her employer is required to search for and produce any and all documents relating to her and to sit for a deposition.

By serving the subpoenas, Garda sends a powerful message to Plaintiff Watson and other potential employee litigants: crossing the company will have lasting and serious repercussions; initiating or maintaining claims against Garda will place even your subsequent employment in jeopardy. *Cf. Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472-73 (S.D.N.Y. 2008) (discussing "*in terrorem*" effect of baseless counterclaims asserted against employees who sue their employer); *Rivera v. NIBCO*, 364 F.3d 1057, 1065-66 (9th Cir. 2003) (in Title VII discrimination case, precluding discovery into plaintiff's immigration status and eligibility for employment: "The chilling effect such discovery could have on the bringing of civil rights actions unacceptably burdens the public interest.").

### C.    Garda Seeks Information that Is Not Relevant to the Merits of This Case

Balanced against the invasion of privacy and risk of harm to Plaintiff, Garda's need for the subpoenas is minimal. The information sought is neither relevant nor "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Plaintiff has never placed her complete employment records with Bloom at issue in this case. *See Woods v. Fresenius Med. Care Group of N. Am.*, No. 1:06-cv-1804-RLY-WTL 2008 U.S. Dist. LEXIS 3756, at *4 (S.D. Ind. Jan. 16, 2008). To the contrary, the documents Garda seeks are almost wholly immaterial. *See, e.g., Hunsaker v. P&G Mfg. Co.,* No. 09-2666-KHV, 2010 U.S. Dist. LEXIS 137279, at *17 (D. Kan. Dec. 29, 2010) ("The subpoena asks for employee evaluations and reviews, attendance records, discrimination complaints, records of civil or administrative

---

from the court to serve any subpoena. *Id*. at *4-5.

proceedings initiated by Plaintiff, and records of positions and temporary assignments available through his current employer. The memoranda submitted by Defendant lacks any justifiable premise for the production of this hodgepodge of information."); *Chamberlain*, 2007 U.S. Dist. LEXIS 70376, at *9 ("the plaintiff's performance history is not relevant to the issues involved in the current case; rather, at issue is the plaintiff's performance in his position with the defendant."); *Graham v. Casey's General Stores*, 206 F.R.D. 251, 255 (S.D. Ind. 2002) ("information sought from the [current employer] to establish an after-acquired evidence defense is irrelevant and not discoverable. Information concerning [current] employment ... simply has no bearing on invoking this defense."); *Slipchenko v. Brunel Energy, Inc*., Civ. No. H-11-1465, 2013 U.S. Dist. LEXIS 85533, at *3-7 (S.D. Tex. June 18, 2013) (collecting cases).

In addition, as recognized in *Zubulake v. UBS Warburg LLC,* 382 F. Supp. 2d 536, 541 (S.D.N.Y. 2005), evidence of a person's character in another employment setting is "inadmissible propensity evidence" under Fed. R. Civ. P. 404(a). *See also Peña v. Burger King Corp*., No. 2:12-cv-248, 2012 U.S. Dist. LEXIS 161492, at *8 (E.D. Va. Sept. 21, 2012) (evidence of whether plaintiff adhered to similar employer policies in other employment not admissible under Rule 404(a); "more importantly," defendant has full access to its own records of plaintiff's employment); *Chamberlain*, 2007 U.S. Dist. LEXIS 70376, at *9-10 ("Such evidence is inadmissible under Federal Rule of Evidence 404(a), which provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith...."); *Zenian v. Dist. of Columbia*, 283 F. Supp.2d 36, 40 (D.D.C. 2003).

Defendants' subpoena requests are thus largely irrelevant to the merits of this case. In light of Defendants' refusal to voluntarily relinquish or narrow its requests, the Court must exercise its discretion to impose restrictions on Defendants' misuse of the discovery process. As

the court persuasively set forth in *Perry v. Best Lock Corp.,* No. IP 98-936-C, 1999 U.S. Dist.

LEXIS 23601, at *5-6 (S.D. Ind. Jan. 21, 1999):

> The fact that one can imagine these subpoenas leading to the discovery of admissible evidence is not alone sufficient to justify their enforcement. Under Rule 26(b)(2) of the Federal Rules of Civil Procedure, the court has the power and duty to look more closely at the discovery requests. Rule 26(b)(2) was amended in 1993 to enable courts to "keep tighter rein on the extent of discovery."… The [Advisory Committee] explained:
>
> The information explosion of recent decades has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression…The revisions in Rule 26(b)(2)… provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery....
>
> If filing what is, by all appearances to the court, a fairly routine case alleging individual employment discrimination opens up the prospect of discovery directed at all previous, current, and prospective employers, there is a serious risk that such discovery can become "an instrument for delay or oppression."

Similarly, here, the Court must rein in Defendants' discovery excesses. *See id*.

> **D.** **To the Extent Garda Seeks Information Relating to Mitigation of Damages, It Must Employ Less Intrusive Means**

To the extent Garda claims that its subpoenas seek information relating to mitigation of damages, Plaintiff has provided Garda with alternative means of obtaining this information. In fact, Plaintiff has already produced relevant documents and provided applicable testimony. (*See* Ex. D, July 16 meet and confer letter). It was patently inappropriate for Defendants to refuse to accept such alternative sources of evidence given the highly intrusive nature of the subpoenas.

In *Graham*, defendant raised the same issue regarding mitigation. The court nonetheless granted a motion to quash the defendant's subpoena on plaintiff's current employer. It held that plaintiff's "less-intrusive" proposal to provide defendant with tax records showing her income was fully adequate. 206 F.R.D. 251, 255. This benign alternative would avert both the acknowledged burden that a subpoena would impose on plaintiff's current employer and the potential negative consequences on plaintiff's new employment. *Id.* at 255-56.

In *Hunsaker*, the court found that the relevance of the subpoena on plaintiff's current

employer was limited to "payroll and benefits information" that plaintiff had agreed to produce himself. The court held that "the risk of the subpoena being used as a tool to harass Plaintiff in his current job, along with the risk of harming his relationship with his employer outweighs any need for Defendant to obtain further confirmation of the payroll and benefits information." 2010 U.S. Dist. LEXIS 137279, at *17-18.[5]

Analogously, in *Princeton Healthcare Sys.*, a disability case, the court held claimants' basic employment and education history to be relevant along with their communications with Defendant regarding their disabilities or requests for leave. The court stressed that "neither past nor present employers of each individual claimant need to be contacted in order for this information to be provided." 2012 U.S. Dist. LEXIS 65115, at *71. Instead, each claimant could complete a fact sheet and produce discovery on these topics. *Id*. at *71-72.

Plaintiff here has provided Defendants with documents and testimony evidencing her earnings with Bloom. As in the cases cited above, these alternative, less intrusive means of providing information on mitigation of damages are sufficient to provide Garda ample information without subjecting Plaintiff and her current employer to undue burden. There is no call for Garda going to the "last resort" of subpoenaing Bloom.

Given that Defendants have undertaken an unnecessarily intrusive and harassing use of this Court's subpoena power, the Court must limit the discovery sought because: (i) the information relating to mitigation of damages is unequivocally "obtainable from some other

---

[5] In *Kimes,* the court recognized that discovery on mitigation was appropriate. "However, the Court is cognizant of the potential burden this discovery could have on Plaintiff's relationship with her current employer, especially given that such documents are discoverable through a lesser intrusive means than serving a subpoena on [Plaintiff's] current employer." The court directed that plaintiff be given an opportunity to produce the requested documents before defendant sought recourse in a third party subpoena. 2015 U.S. Dist. LEXIS 21703, at *7-9. Similarly, in *Richardson*, even where information and documents were relevant, a defendant was precluded from seeking them from a current employer where the plaintiff had already produced them herself. 2014 U.S. Dist. LEXIS 60298 at *3-4.

source that is more convenient, less burdensome, or less expensive;" (2) Garda has already "had the opportunity" "to obtain the information sought" through Interrogatories and Plaintiff's production of Earning Statements and similar documents; and (3) "the burdens" and intrusions on Plaintiffs' employment relationships with current and prospective employers fundamentally "outweigh" any "likely benefit" of Defendant's subpoenas. Fed. R. Civ. P. 26(b)(2)(C).

### E.    Garda's Subpoenas Are Overbroad on Their Face

Defendants' purported purpose of obtaining mitigation evidence is belied by their undeniably overbroad document subpoena, which is impermissible on its face. Garda seeks "any and all documents" concerning Plaintiff's employment -- a request that is vastly overbroad given the facts of this case and the undue burden on Plaintiff and her current employer. Similarly, the deposition subpoena is not limited in any fashion.

"A subpoena imposes an undue burden on a party when a subpoena is overbroad. A subpoena is overbroad if it does not limit the documents requested to subject matter relevant to the claims or defenses. For that reason, courts have frequently concluded that a subpoena for an entire file constitutes an overbroad request where that file likely contains both relevant and irrelevant information." *Champion Pro Consulting Group v. Impact Sports Football, Inc.*, 2014 U.S. Dist. LEXIS 165825, *9-10 (M.D.N.C. Nov. 26, 2014) (citations omitted).

This District directly addressed the issue at hand in *Singletary*:

> Here, Defendant's subpoenas duces tecum are both overbroad and not tailored to a particular purpose… [They] command the production of "[t]he complete employment file of [Plaintiff]...". Such subpoenas could lead to the production of medical information, social security numbers, payroll information, income tax information, information about family members, and other documents completely extraneous to this litigation, and the Court finds it difficult to conceive of subpoenas which could be more expansively written than these. *See Hendricks* [*v. Total Quality Logistics, LLC*], 275 F.R.D. 251, 255-56 [(S.D. Ohio 2011)] (noting, where the subpoenas at issue requested "any and all personnel documents pertaining to the named plaintiff," that "it [was] difficult to conceive of subpoenas which could be more expansively written than those at issue"); *see*

also *Cook* [*v. Howard*, 484 Fed. Appx. 805, 813 (4th Cir. 2012)] ("While the Appellants assert that these materials may have led to discovery of admissible evidence, they present no intelligible explanation of how that is so, nor can we detect any; the requests have every indicia of the quintessential fishing expedition.").

289 F.R.D. at 241 (further citations omitted).

See also, e.g., *Peña*, 2012 U.S. Dist. LEXIS 161492, at *6 (subpoenas seeking plaintiffs' "complete employment files" from previous employers "are overbroad, and could be quashed on this basis alone without addressing relevance")(citing cases); *EEOC v. Evening Entm't Group LLC*, CV 11-01870-PHX-FJM, 2012 U.S. Dist. LEXIS 85310, at *3 (D. Ariz. June 20, 2012) ("Defendant's blanket requests for all personnel records from three former employers are overbroad on their face and amount to a fishing expedition"); *Hunsaker*, 2010 U.S. Dist. LEXIS 137279, at *17; *Badr v. Liberty Mut. Group, Inc*., No. 3:06-cv-1208, 2007 U.S. Dist. LEXIS 73437, at *7-8 (D. Conn. Sept. 27, 2007) (subpoena for "any and all records relating to" plaintiff overbroad on its face); *Chamberlain*, 2007 U.S. Dist. LEXIS 70376, at *8-10 (despite its alleged purpose of obtaining information regarding credibility, defendant could not justify "a broad search of [plaintiff's] employment records on this ground."); *Barrington v. Mortgage IT, Inc*., NO. 07-61304-CIV-COHN/SELTZER, 2007 U.S. Dist. LEXIS 90555, at *16 (S.D. Fla. Dec. 10, 2007) (subpoenas overly broad on their face because they sought "any and all documents, files and records, reflecting or relating to the employment" of plaintiffs); *Pacheco v. Borden Dairy Co. of Fla., LLC*, No: 5:14-cv-108-Oc-10PRL, 2014 U.S. Dist. LEXIS 66293, at *2-3 (M.D. Fla. May 14, 2014) (noting an "abundance of case law" supporting plaintiff's position).

In short, Garda "simply is not entitled to amass a collection of documents in hopes of finding something useful." *Woods*, 2008 U.S. Dist. LEXIS 3756, at *7.

The proper remedy is to preclude enforcement of the subpoenas and to bar Garda from issuing any further subpoenas on Bloom or Zindel without leave of court. *Singletary*, 289 F.R.D.

at 242-44 (quashing subpoenas and requiring defendant to obtain leave of court before issuing any other subpoenas seeking plaintiff's previous employment records). *See also, e.g., Lewin v. Nackard*, No. CV 10-8041-PCT-FJM, 2010 U.S. Dist. LEXIS 123738 (D. Ariz. Nov. 4, 2010) (where defendant sought plaintiff's entire personnel files, granting motion to quash in its entirety and issuing protective order); *Woods*, 2008 U.S. Dist. LEXIS 3756, at *7 (quashing subpoenas); n.4, <u>*supra*</u>, citing *Webb v. E. Ramapo Sch. Dist.* (Ex. E); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No 1:07-cv-2207-JGK-GWG (S.D.N.Y. July 24, 2008) (Ex. F) (granting protective order against similar subpoenas and directing: "In addition, defendant should not issue any subpoenas in the future to employers of the plaintiffs… without first seeking leave of the court.").

### F.  Garda Cannot Justify a Deposition of Bloom's CEO, Heather Zindel

Even if the Court believes that certain limited discovery from Bloom is relevant and permissible, it should not countenance a deposition of Zindel. As in *EEOC v. Midwest Reg'l Med. Ctr., LLC*, 2014 U.S. Dist. LEXIS 59697 (W.D. Okla. Apr. 30, 2014), Plaintiff maintains that a deposition of her current employer is "excessive, amounts to undue harassment and oppression which could jeopardize her existing employment relationship, and should not be allowed." *Id*. at *5. The court there found that deposing the plaintiff's current employer "could cause annoyance and embarrassment" and that defendant must obtain the information sought "through less intrusive means." *Id*. at *6.[6]

---

[6] Relatedly, even in unusual cases where courts permit discovery on absent members of Rule 23 classes, they generally limit a defendant to targeted written discovery. *See, e.g., Clark v. Universal Builders, Inc*., 501 F.2d 324, 341 (7th Cir. 1974) ("in light of the nature of the deposition process -- namely, the passive litigants are required to appear for questioning and are subject to often stiff interrogation by opposing counsel with the concomitant need for counsel of their own -- we are of the view that the burden confronting the party seeking deposition testimony should be more severe than that imposed on the party requesting permission to use interrogatories"); *Baldwin & Flynn v. Nat'l Safety Assocs.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993) (especially heavy burden to justify class member depositions).

Moreover, the deposition is unduly burdensome to Zindel. When assessing whether a deposition subpoena is unduly burdensome, courts consider the following factors: (1) the relevancy of the proposed testimony; (2) the need for the testimony; (3) the breadth of the subpoena; (4) availability of the testimony by other means; and (5) the burden on the subpoenaed party in obeying the subpoena. *See E.A. Renfroe & Co., Inc. v. Moran*, No. 3:07-MC-036-SAA, 2007 U.S. Dist. LEXIS 91908 (N.D. Miss. Dec. 3, 2007) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 819 (5th Cir. 2004)); *see also Singletary*, 289 F.R.D. at 241.

Here, Zindel's testimony is of limited relevance, at best, and hardly essential to this litigation. She lacks personal knowledge of the facts relevant to this action.[7] The subpoena is not restricted to particular topics or limited in any other fashion. (Thus, Plaintiff presumes that Garda intends to question Zindel in the same unbounded and invasive manner in which its document subpoena is framed, and similarly wade into Plaintiff's private and personal matters.) Any relevant testimony is available by other means: Plaintiff has herself provided applicable discovery and has suggested targeted written interrogatories.

Finally, the burden on Zindel is substantial. In order to prepare for and participate in the deposition, Zindel would have no choice but to set aside her obligations as the as CEO of Bloom, a non-party to this litigation. She would likely need to engage and pay for her own counsel to represent her. This investment of time and resources, juxtaposed against Zindel's and Bloom's lack of a stake in the outcome in this litigation, underscores the heavy burden Zindel would

---

[7] Courts have repeatedly held that a deposition may be improper when the proposed deponent, particularly a high-level corporate executive, has little knowledge relevant to the issues in the case. *See, e.g., Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374, 2007 U.S. Dist. LEXIS 8295, at *8 (N.D. Cal. Jan. 25, 2007); *Baine v. General Motors Corp.*, 141 F.R.D. 332, 334-35 (M.D. Ala. 1991). Under this body of case law, even where the deposition is aimed at relevant, discoverable information, a party must first pursue alternate means of obtaining it – such as interrogatories.

endure. Zindel's status as a third party increases the burden of the Subpoena because courts afford extra weight to non-litigants in a Rule 45 burden analysis. *See, e.g., Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013) ("In keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held that 'non-party' status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue.") (citations omitted). *See generally Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).[8]

The onus that a deposition would impose on Zindel only bolsters Plaintiff's apprehension that the subpoena will affect her employment with Bloom. It is distinctly possible that Zindel and Bloom could blame Ms. Watson for dragging them into this matter and lash out at her from a perception that she is a "litigious" employee who is more trouble than she's worth.

## IV.    CONCLUSION

A full-fledged examination into Plaintiff's complete employment record with Bloom will not shed any light on the merits of the claims in this case. The fact that Defendant is seeking all of Plaintiff's post-Garda employment records, and an invasive deposition of Bloom's CEO, suggests that it actually seeks (1) to obtain character evidence, which is inadmissible under Fed. R. Evid. 404(a); and (2) to unduly burden and interfere with the relationship between Plaintiff and her current employer, Bloom.

Garda has ready access to alternative, less intrusive means of obtaining information relevant to mitigation of damages. Indeed, Plaintiff has already come forward with comprehensive discovery on these topics. In the end, the subpoenas serve only to harass Ms. Watson and interfere with her new job.

---

[8] Here, the burden on Zindel is only increased by the fact that the deposition is to be videotaped – certainly adding embarrassment and inconvenience for the witness – and that the notice does not contain a time limitation, stating that the deposition may continue from day to day until completed. Garda is essentially treating Zindel as a party to the litigation.

For these reasons, the court should grant Plaintiff's proposed protective order.


Dated: July 17, 2015                              Respectfully submitted,

                                                  s/ _____
                                                  R. Scott Oswald, VA Bar No. 41770
                                                  Nicholas Woodfield, VA Bar No. 48938
                                                  **THE EMPLOYMENT LAW GROUP, P.C.**
                                                  888 17th Street NW, Suite 900
                                                  Washington, DC 20006
                                                  Telephone: (202) 261-2812
                                                  Facsimile: (202) 261-2835
                                                  soswald@employmentlawgroup.net
                                                  nwoodfield@employmentlawgroup.net

                                                  Katherine Kimpel, admitted *pro hac vice*
                                                  **SANFORD HEISLER KIMPEL, LLP**
                                                  1666 Connecticut Avenue, N.W., Suite 300
                                                  Washington, D.C. 20009
                                                  Telephone: (202) 499-5202
                                                  Facsimile:  (202) 499-5119
                                                  kkimpel@sanfordheisler.com

                                                  ***Attorneys for Plaintiff***

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 17th day of July, 2015, I will electronically file the
foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification
of such filing to the following counsel of record:


Joon Hwang, VA Bar No. 82248
S. Libby Henninger**,** admitted *pro hac vice*
**LITTLER MENDELSON, P.C.**
1150 17th Street, NW, Suite 900
Washington, DC 20036
Telephone: (202) 842-3400
Facsimile:  (202) 842-0011
jhwang@littler.com
lhenninger@littler.com

Scott Forman, admitted *pro hac vice*
Jessica Travers, admitted *pro hac vice*
**LITTLER MENDELSON, P.C.**
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone: (305) 400-7500
Facsimile:  (305) 675-8497
sforman@littler.com
jtravers@littler.com

***Attorneys for Defendants***


s/ _____
Nicholas Woodfield, VA Bar No. 48938
**THE EMPLOYMENT LAW GROUP, P.C.**
888 17th Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 261-2812
Facsimile: (202) 261-2835
nwoodfield@employmentlawgroup.net